Anita **COLLINS**, Kathy Jackson, and Sheryl Shehane, Appellants,

v.

Henrietta **SMITH**, Appellee.

No. 01–99–01474–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 9, 2001.

---

James C. Benson, Houston, for Appellant.

James W. Bradford, Jr., Angleton, for Appellee.

Panel consists of Justices MIRABAL, JENNINGS, and DUGGAN.*

**OPINION**

JENNINGS, Justice.

This is an appeal involving a will contest and an action to set aside or cancel a deed. The appellants, Anita Collins, Kathy Jackson, and Sheryl Shehane, appeal the trial court's judgment in favor of appellee, Henrietta Smith. The appellants challenge the factual sufficiency of the evidence to support the jury's findings in favor of Smith on four issues: (1) testamentary intent, (2) fraudulent inducement, (3) breach of fiduciary duty, and (4) the appellants' good

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

faith and just cause in prosecuting a previous will. We affirm.

## Factual Background

William Henry Avitts, Jr., the decedent, died on July 14, 1998 at the age of 90. His wife of 67 years had predeceased him in April of 1997. The parties are all daughters of the decedent.[1] During his lifetime, the decedent had given his daughters in excess of $200,000 from a trust he funded with oil income from his property. In 1994, the decedent had executed a will devising all of his property to his daughters equally.

Shortly after his wife passed away, the decedent executed a power of attorney designating his daughter, Smith, as his agent, and he converted his checking and certificate of deposit accounts to survivorship accounts with Smith. Smith was the only daughter who had not moved off the decedent's property. The decedent had been diagnosed with prostate cancer in 1992, and his health rapidly declined after his wife's death. By February 1998, he had to wear a permanent indwelling catheter.

In April 1998, at the decedent's request, Smith faxed instructions, in her handwriting, concerning the preparation of a new will for the decedent to John Powell, an attorney. These instructions specified that, in the new will, all cash money remaining in the estate would be divided among the decedent's grandchildren and that the contents of his house would go to his five daughters. Powell prepared the will according to these instructions but never spoke with the decedent about it.

In May 1998, the decedent's urologist recommended that he see a geriatric psychiatrist because of his depressed mood.

That same month, the decedent met with Dr. Gaitz, a geriatric psychiatrist, who diagnosed him with having "an adjustment disorder with depressed mood as a response to the stress of physical illness and inability to care for himself." Smith and one of her sisters accompanied the decedent on each of these doctor's appointments.

On May 21, 1998, the decedent executed a deed conveying all of his real estate, including his home, to Smith and her husband. Powell prepared the deed for the decedent at his request. The price and terms of payment for the property, consisting of approximately 26.57 acres, were not specified in the deed.

When the decedent and Smith came to Powell's office to execute the will, Powell refused to oversee the execution because he considered both the decedent and Smith to be his clients and feared a future will contest. On May 22, 1998, the decedent executed the will in front of a notary and two witnesses at another law office. The 1998 will provided *inter alia* that all personal property in the decedent's home, except some tables, were to be shared by his daughters, "share and share alike," and that all cash monies remaining in the estate, including all proceeds from the sale of his real property, were to be divided equally among his grandchildren. The will appointed Smith as independent executrix.

The decedent moved in with Smith at the end of May. He died on July 14, 1998 in hospice care.

## Procedural Background

On August 5, 1998, Smith filed an application for probate of the May 22, 1998 will. The appellants contested admission of the

---

**1.** The decedent and his wife have five daughters; the decedent's eldest daughter, Modeen O'Farrell, is not a party to the will contest.

1998 will to probate on grounds of testamentary capacity, lack of testamentary intent, breach of fiduciary duty, and undue influence; they also filed an action to set aside or cancel the deed conveying the decedent's property to Smith and her husband. The appellants claimed that Smith had tortiously interfered with their inheritance rights. Additionally, the appellants sought to have the survivorship designation on the decedent's bank account and certificate of deposit set aside,[2] and they filed their own application to probate the decedent's November 14, 1994 will which gave all of the decedent's property to his daughters equally. The court appointed a temporary administrator, Mary Cudd, during the pendency of the will contest.[3]

After a five-day trial, the jury made the following findings: (1) the decedent had testamentary capacity when he executed the 1998 will; (2) neither the 1998 will nor the deed were procured by the undue influence of Smith; (3) the decedent had testamentary intent when he executed the 1998 will; (4) the decedent had mental capacity to execute the deed; (5) Smith and her husband did not fraudulently procure or induce the decedent to execute the deed; (6) Smith had a fiduciary relationship with the decedent as to the deed and the 1998 will; (7) Smith did not breach her fiduciary duty to the decedent by obtaining the deed and the 1998 will; and (8) the appellants did not prosecute the proceeding to probate decedent's 1994 will in good faith and with just cause. The jury also answered questions concerning the amount of attorney's fees expended by the parties.

**2.** During trial, Smith disclaimed any interest in these accounts and assigned her interest to the decedent's estate.

**3.** The final account filed by the temporary administrator alleges the total value of the decedent's estate is approximately $72,940.06

The trial judge admitted the decedent's 1998 will to probate, declared the deed valid, entered a judgment holding the appellants jointly and severally liable for Smith's attorney's fees, and adjudged all costs against the appellants.

In their motion for new trial, the appellants contended the evidence was insufficient to support several of the jury's findings.

## Factual Sufficiency of the Evidence

The appellants challenge the factual sufficiency of the evidence to support the jury's findings in favor of Smith on four issues: (1) testamentary intent; (2) fraudulent inducement; (3) breach of fiduciary duty; and (4) the appellants' good faith and just cause in prosecuting the 1994 will.

■ We will set aside a jury's finding for factual insufficiency only if, after reviewing, weighing, and considering all the evidence, the jury finding is so against the great weight and preponderance of the evidence that the verdict is manifestly unjust. *See Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986) (per curiam); *Miller v. Kendall*, 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1990, no writ). When undertaking a factual sufficiency review, we may not merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Merckling v. Curtis*, 911 S.W.2d 759, 763 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Miller*, 804 S.W.2d at 939.

(this amount includes the decedent's personal property, an oil royalty, cash paid by Smith, and cash from the decedent's checking and certificate of deposit accounts). A supplement to the final account lists the real property purchased by the Smiths as a verified claim owed to the estate.

## Testamentary Intent

■ In issue one, the appellants claim the evidence was insufficient to support the jury's finding that the decedent had testamentary intent to execute the 1998 will. The appellants challenge the jury's answer to the following question:

### JURY QUESTION NO. 4

Do you find from a preponderance of the evidence that William Henry Avitts, Jr., *had the testamentary intent to execute the Will dated May 22, 1998?*

Answer: Yes

### Instruction

You are instructed that a person lacks "testamentary intent" if they [sic] do not understand the contents of the will they signed.

(Emphasis added.)

■ A testator is presumed to know the contents of a testamentary instrument signed by him if he: (1) is of sound mind, (2) is able to read and write, (3) has the capacity to acquire knowledge of the contents of a document by exercising his faculties, and (4) executes the instrument and has it witnessed as required by statute. *Boyd v. Frost Nat'l. Bank,* 145 Tex. 206, 196 S.W.2d 497, 507–508 (1946); *Kelly v. Settegast,* 68 Tex. 13, 2 S.W. 870, 872–73 (1887); *Gilkey v. Allen,* 617 S.W.2d 308, 311 (Tex.Civ.App.—Tyler 1981, no writ). The appellants rely on an exception to this general rule in which unexplained circumstances may cast suspicion on the issue of whether the testator knew the contents of the will. *Kelly,* 2 S.W. at 872–73. In such a case, the proponent of the will must then

present an explanation that removes the suspicion. *Id.*

The appellants claim the following suspicious circumstances tainted the execution of the decedent's will: (1) the decedent was in poor health; (2) the decedent did not give the instructions on the will preparation; (3) Smith had a "deep interest" in making the will; (4) the will execution was kept secret from the beneficiaries; (5) Smith arranged for and attended the will execution; (6) the disposition of estate assets was unnatural and impossible; and (7) the decedent did not have the means to determine the contents of the will. The appellants claim *Kelly*'s "suspicious circumstances" exception applies to this case.[4]

Even if the above circumstances cited by the appellants cast suspicion on the issue of whether the decedent knew the contents of the 1998 will at the time of its execution, Smith met her burden to present evidence removing any suspicion.

The jury heard testimony from several witnesses that the decedent was of sound mind and wanted his grandchildren to inherit his property. Edith Lanfear, the decedent's niece, visited with the decedent in July of 1998 and testified the decedent wanted to provide for his grandchildren under the will. O'Farrell, the decedent's eldest daughter, testified that the deceased wanted Smith to have his house and that one of the appellants, Sheryl Shehane, was aware of this fact. She stated that he wanted the grandchildren to have the cash money because he had already given the daughters their inheritance by giving them

---

4. In *Kelly,* the testator was unable to read or write, was staying at the house of one of his legatees, was so ill it was doubtful he understood what he was doing, signed the will by mark, and disinherited his only living daughter who was in the same house at the time and did not know her father was making a

will. 2 S.W. at 873. Additionally, neither beneficiary named in the will was related to the testator, and it was not shown he ever gave anyone instructions to write a will or that he had requested one be written. *Id.* These were only some of the "suspicious circumstances" present in *Kelly.*

royalty checks. O'Farrell further testified that, in her opinion, the decedent appeared to be of sound mind when he executed the 1998 will. Dr. Grant MacDonald, the decedent's physician since 1988, saw the decedent on a monthly basis and testified that he believed the decedent's mental capacity was in no way incapacitated in May and June of 1998. Jimmy Marulo, a hospice care employee who visited with the decedent six days before he passed away, testified the decedent was competent enough to make healthcare decisions for himself. Onamae Worden, a life-long friend of the decedent, testified she visited with the decedent four times in June and July of 1998 and that she was of the opinion he was of sound mind. Gwendolyn Golden, another friend of the decedent, also testified the decedent was of sound mind. Powell, who knew the decedent for 10 years, testified the decedent's mental health was excellent and that he was of sound mind in early 1998. Smith testified that the instructions she gave Powell to prepare the 1998 will were exactly what the decedent had told her and that she faxed the information to him at the decedent's request. The evidence showed that the 1998 will was drawn up by Powell, who had previously handled other matters for the decedent, and was executed before two disinterested witnesses.

The sum of all this evidence is that the decedent was of sound mind and knew what he was doing when the will was executed. The jury could have reasonably found that any suspicion surrounding the execution of the 1998 will was removed by this evidence.

The jury's finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. We hold the evidence is factually sufficient to support the jury's finding that the decedent had testamentary intent to execute the 1998 will.

We overrule issue one.

**Fraud**

■ In their second issue, the appellants contend the evidence is factually insufficient to support the jury's finding that Smith did not fraudulently procure or induce the decedent to execute the deed of sale of the decedent's home and 26.57 acres to the Smiths, prior to the execution of his 1998 will. The appellants claim neither Smith nor her husband intended to pay the decedent for the property conveyed by deed and that the decedent relied on their promise to pay. The appellants challenge the jury's answer to the following question:

JURY QUESTION NO. 8

Do you find by a preponderance of the evidence that Henrietta Smith and Vernon Smith *fraudulently procured or induced* William Henry Avitts, Jr.[,] to execute the deed of May 21, 1998?

Answer: No

Instruction

A person fraudulently procures or induces another to execute a deed when the promise of the grantee inducing the execution of the deed was fraudulently made for the purpose of deceiving the grantor, with no present intention on the part of the grantee to perform the promises when they were made and the grantor had no knowledge at the time that the grantee had no intention of performance of the promises, but believed and relied on such promises and was induced thereby to execute the deed to his injury.

(Emphasis added.)

■ Proof of fraudulent inducement requires establishing: (1) a material repre-

sentation was made; (2) the representation was false; (3) the speaker knew the representation was false when made or made it recklessly without any knowledge of its truth; (4) the speaker made the representation with the intent it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. *See Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990). A misrepresentation is a falsehood or untruth made with the intent to deceive. *Gaspard v. Beadle*, 36 S.W.3d 229, 235 (Tex.App.— Houston [1st Dist.] 2001, pet. denied). The appellants base their fraud claim on Smith's promise to pay for the property, claiming she *never intended* to pay.

 "One of the essential elements of fraud based upon promises to be performed in the future is that the promisor had no intention to perform the promises at the time they were made." *Stuard v. Vick*, 9 S.W.2d 494, 496 (Tex.Civ.App.— Eastland 1928, writ dism'd w.o.j.). A failure to perform by itself, however, is not evidence of the promisor's intent not to perform when the promise was made, but is a circumstance to be considered along with other factors to establish intent. *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex.1992) (per curiam).

The appellants contend that because no mortgage or note was prepared to protect the decedent's interest in his real property, Smith had no intention to pay for the property. Additionally, the appellants assert Smith's intention not to pay is evidenced by the fact that, at trial, Smith was unclear on the terms of payment for the property as well as the agreed upon price. Moreover, the payments Smith claims she made towards the property, $350 per month beginning in January 1999, were deposited into the survivorship account rather than paid directly to the temporary administrator of the estate. By paying this way, the appellants argue Smith was literally taking money "out of [her] left pocket and put[ting] it into her right pocket."

As to the purchase price, Smith testified she and the decedent agreed she would pay $46,000 for the property, and she explained that the decedent agreed she did not have to make payments as long as she was caring for him. She explained her first payment was not made until January 1999 because she had been taking care of the decedent's business. Smith testified she paid $2,500 towards the property at the time of trial and deposited the monthly payments, payable to the decedent's estate, into the joint account. She was unaware this account was a survivorship account.[5] Furthermore, during the trial, Smith disclaimed any interest in this account and assigned her interest to the decedent's estate.

With regard to the absence of a mortgage, the decedent's former attorney, Powell, testified he was under the impression the conveyance was a cash transaction between the decedent and Smith, with payment of the full amount to be made within a reasonable time, not requiring any kind of mortgage.

After considering all of the evidence, the jury could have concluded Smith intended to pay for the property as she promised when the deed was executed. Thus, the jury's finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. We hold the evidence is factually sufficient to support the jury's finding that Smith did not fraudulently procure or induce the decedent to execute the deed.

We overrule issue two.

---

**5.** A safekeeping order, freezing these funds, was issued by the court on April 19, 1999 after the appointment of the temporary administrator.

### Breach of Fiduciary Duty

In issue three, the appellants claim the jury's finding that Smith did not breach her fiduciary duty to the decedent regarding the preparation of the deed and the 1998 will was against the great weight and preponderance of the evidence and is manifestly unjust.[6] The appellants challenge the jury's answer to the following question:

### JURY QUESTION NO. 11

Do you find from a preponderance of the evidence that Henrietta Smith *breached her fiduciary duty* to William Henry Avitts, Jr.[,] by obtaining the following:

1. the deed dated May 21, 1998?

 Answer: No

2. the Will dated May 22, 1998?

 Answer: No

(Emphasis added.)

A fiduciary relationship creates a special bond requiring the fiduciary to deal fairly and in good conscience. *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 867 (Tex.App.—Houston [1st Dist.] 1999, pet. granted Aug. 24, 2000). Texas courts have applied a presumption of unfairness to transactions between a fiduciary and a party to whom he owes a duty of disclosure, thus casting upon the profiting fiduciary the burden of showing the fairness of the transactions. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507–08 (Tex.1980); *Tuttlebee v. Tuttlebee*, 702 S.W.2d 253, 257 (Tex.App.—Corpus Christi 1985, no writ). The fiduciary must show proof of good faith and that the transaction was fair, honest, and equitable. *Miller v. Miller*, 700 S.W.2d 941, 946–47 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). A transaction is unfair if the fiduciary significantly benefits from it at the expense of the beneficiary, as viewed in the light of circumstances existing at the time of the transaction. *Id.* at 947.

The appellants claim Smith breached her fiduciary duty to the decedent by: concealing the information regarding the sale of the decedent's property from Powell; failing to have another attorney review the 1998 will and deed with the decedent prior to the will execution; failing to advise Powell that all cash monies in the decedent's bank accounts were held in survivorship form, thereby negating the gift to the grandchildren upon the decedent's death; not disclosing to Powell that the decedent's real property, an asset of his estate, would be sold before the will's execution; and failing to execute a new deposit agreement with the bank under the power of attorney to remove the survivorship designation. Moreover, the appellants claim the 1998 will and the deed were procured to the substantial benefit of Smith without a showing of fairness of the transaction to the decedent.

Conversely, Smith contends the evidence shows she did exactly what her father

---

**6.** We note that under section 233A of the Texas Probate Code, an executor or administrator of a decedent's estate generally has the exclusive right to bring suit for the recovery of real and personal property belonging to the estate. Tex. Prob.Code Ann. § 233A (Vernon Supp.2001); *Burns v. Burns*, 2 S.W.3d 339, 342 (Tex.App.—San Antonio 1999, no pet.). However, an exception to this general rule allowed the appellants, as heirs of the decedent's estate, to maintain suit against Smith for breach of fiduciary duty because her interest, as the personal representative of the estate, was antagonistic to the appellants. *See* Tex. Prob.Code Ann. § 233A; *Burns*, 2 S.W.3d at 342; *see also Evans v. First Nat. Bank of Bellville*, 946 S.W.2d 367, 372 (Tex.App.—Houston [14th Dist.] 1997, writ denied). The jury found that a fiduciary relationship existed between Smith and the decedent as to the deed and the 1998 will, and no one complains of this finding on appeal.

instructed her to do. With regard to the deed, she testified the decedent himself gave the information concerning preparation of the deed directly to Powell and that her only involvement with preparation of the deed was dropping off a description of the property at the abstract office and accompanying the decedent when the deed was executed. Smith testified that she began making monthly payments in January 1999 towards the property and that her agreement with her father was that she did not have to begin making payments on the property as long as she was caring for him.

Regarding the fairness of the transaction, Smith testified she agreed to purchase the property from the decedent for $46,000. The 26.57 acres conveyed consists of two parts—the house is located on 2.6 acres, and the land behind the house consists of 23.97 acres. The appellants presented the testimony of a real estate appraiser, Robert Salisbury, who appraised the entire property at $116,200. However, Smith rebutted this evidence. A copy of the City of Pearland's tax records valued the home at $34,600, and a tax statement from the Alvin Independent School District valued the rear section of the property at $15,310. The inventory filed by the decedent in his wife's estate appraised the entire property at $53,090. From this evidence, the jury could have found Smith's consideration for the property was adequate and that the transaction was fair.

The evidence also showed the decedent to be a generous and fair man. There was a family tradition that the decedent would give his children and grandchildren an acre of land or a thousand dollars upon marriage. Additionally, the decedent had assigned income from certain royalty checks to his daughters.[7] O'Farrell, the eldest daughter, stated the decedent wanted Smith to have the house, and she testified that one of the appellants, Sheryl Shehane, was aware of his desire for Smith to have the property.

The appellants also argue the decedent's conveyance of the property to Smith a day before the execution of the will "gutted" the provision in the 1998 will devising all the cash money in his estate, including "all proceeds from the sale of my real property," to his grandchildren. However, contrary to the appellants' assertions, this testamentary disposition will not be frustrated by the deed because payments Smith makes on the property will be deposited with the decedent's estate, and these payments will be received by the grandchildren as the decedent desired.

In light of all the evidence, the jury could have found Smith rebutted the presumption of unfairness and did not breach her fiduciary duty. The jury's finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. We hold the evidence is factually sufficient to support the jury's finding that Smith did not breach her fiduciary duty to the decedent.

We overrule issue three.

### Good Faith and Just Cause in Prosecuting the 1994 Will

█ In their fourth issue, the appellants claim the jury's finding that they did not probate the decedent's 1994 will in good faith and with just cause is against the great weight and preponderance of the evidence and is manifestly unjust. The appellants contend they are entitled to an allowance out of estate assets because they brought the contest proceeding in good

7. The decedent's daughters received payments in excess of $200,000 from these royal- ty checks over the years.

faith and with just cause in light of their knowledge of the decedent's deteriorating physical and mental health at the time of the execution of the 1998 will and the manner and means by which it was procured and executed. *See* TEX. PROB.CODE ANN. § 243 (Vernon Supp.2001); *Harkins v. Crews,* 907 S.W.2d 51, 62 (Tex.App.— San Antonio 1995, writ denied). The appellants challenge the sufficiency of the evidence to support the jury's answer to the following question:

### JURY QUESTION NO. 13

Do you find from a preponderance of the evidence that Anita Collins, Sheryl Shehane and Kathy Jackson *have prosecuted this proceeding to probate the Will of William Henry Avitts, Jr.[,] dated November 14, 1994, in good faith and with just cause?*

Answer: No

### Instruction

You are instructed that "good faith" means an action which is prompted by honesty of intention, or a reasonable belief that the action was probably correct.

You are further instructed that "with just cause" means that the actions of Anita Collins, Sheryl Shehane and Kathy Jackson in this proceeding must be based on reasonable grounds and there must have been a fair and honest cause or reason for said actions.

(Emphasis added.)

Texas Probate Code section 243, entitled "Allowance for Defending Will," provides for an allowance out of estate assets in certain circumstances:

When any person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings. When any person designated as a devisee, legatee, or beneficiary in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he may be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX. PROB.CODE ANN. § 243. The appellants, beneficiaries under the 1994 will, assert the evidence shows they offered the 1994 will in good faith and with just cause, and therefore, they are eligible for the allowance under section 243.

The appellants contend the testimony of expert Dr. Floyd Jennings, a clinical psychologist and an attorney, revealed that the type of depression the decedent was suffering from would affect the clarity of his thinking and make him susceptible to the influence of others. The appellants claim evidence of their good faith in probating the 1994 will is shown by the testimony of Jim Guiberteau, a probate expert, who stated that the 1998 will was not prepared according to usual standards.[8]

---

**8.** Jury Question Number 14 asked the jury to ascertain what sum of money would be a reasonable attorney's fee for the appellants, and the jury filled in specific amounts for the cost of preparing the case for trial and for any appeals. The appellants assert the jury's an-

swers to this question show the jury recognized their good faith in filing the 1994 will for probate. Contrary to the appellants' assertions, this question is not premised on any finding of liability, and the jury was compelled to answer this question regardless of

The jury also heard testimony from several witnesses that the decedent was of sound mind when he executed the 1998 will and that he wanted his grandchildren to inherit his property.[9] Although both sides presented conflicting evidence on the issues of undue influence, testamentary intent, and testamentary capacity, after considering the circumstances of the case and the conflicting nature of the testimony, we cannot say the jury's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Harkins*, 907 S.W.2d at 63–64. We hold the evidence is factually sufficient to support the jury's finding that the appellants did not proceed in good faith and with just cause in probating the 1994 will.

We overrule issue four.

We affirm the judgment.

---

whether they found the appellants probated the 1994 will in good faith and with just cause. Thus, the jury's answer to question 14 has no bearing on the appellants' fourth issue.

**9.** The sum of Smith's evidence demonstrating the decedent was of sound mind and knew what he was doing when the 1998 will was executed also supports the jury's finding regarding the appellants' good faith and just cause in attempting to probate the 1994 will.