Opinion issued January 13, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01087-CV

————————————

**ARNOLD J. WEBRE, JR. AND JO KATHRYN GROSS, Appellants**

**V.**

**RAY BLACK, JR., GUARDIAN OF THE ESTATE OF ARNOLD J. WEBRE, SR., AN INCAPACITATED PERSON, Appellee**

On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Case No. 394,381

# O P I N I O N

The underlying case is a guardianship proceeding. In this appeal, we consider whether the trial court abused its discretion in approving a settlement

reached by a ward's court-appointed guardian in a suit the guardian brought on his ward's behalf. We reverse and remand.

## BACKGROUND

Arnold J. Webre, Sr. is an 87-year-old man who has been incompetent for many years. Arnold and his wife, Brenda Webre, were married for 49 years before Brenda died in 2007. When Arnold and Brenda married, she had one child from a previous marriage, Tracy Vaught, and he had two children from a previous marriage, Arnold Webre, Jr. and Jo Kathryn Gross. Together Arnold and Brenda had a fourth child, Terry Webre. After Tracy Vaught's biological father died, Arnold adopted Tracy.

When Brenda died, she left her estate in trust for the benefit of Arnold during his lifetime, then to the two children she shared with Arnold, Tracy and Terry. Robert Wayne Sneed served as attorney-in-fact for Arnold for several years before a guardianship was established. After Brenda's death, Sneed and Robert Fenner were appointed as independent co-executors of Brenda's estate.

During court proceedings involving Brenda's estate, Arnold's children from his previous marriage, Arnold, Jr. and Jo Kathryn, attempted to intervene for themselves and on Arnold's behalf, contending that Sneed and Fenner had improperly characterized community property belonging to Arnold and Brenda as

2

Brenda's separate property.[1]  Arnold, Jr. and Jo Kathryn also complained about three transactions that Sneed had taken while acting as Arnold's attorney-in-fact and executor of Brenda's estate in which he facilitated the exchange of assets between Arnold and Brenda's estate.  These claims by Arnold, Jr. and Jo Kathryn were ultimately dismissed from Brenda's estate proceeding because only a guardian has standing to prosecute claims on behalf of an alleged incompetent person.

Thereafter, Arnold, Jr. and Jo Kathryn sought appointment of a guardian for Arnold's estate.  The trial court granted their application and appointed appellee, Ray Black, as guardian of Arnold's estate.  Black, in his capacity as guardian of Arnold's estate, filed suit against Sneed and Fenner, in their capacities as co-executors of Brenda's estate, alleging that the inventory, appraisement, and list of claims filed in Brenda's probate proceeding "include[d] misstatements as to the separate and community property characterization of the assets that belong to Brenda and Arnold Webre."  Black's petition further alleged that "Mr. Sneed, while acting both in his capacity as Independent Co-Executor of the Estate of Brenda B. Webre, Deceased, and as attorney-in-fact for Arnold J. Webre, Sr., engaged in a number of exchanges of assets, both separate and community in

---

[1]  Brenda's father, Jack Blalock, was an attorney in Houston, and many of the transactions complained of by Arnold, Jr. and Jo Kathryn involve the issue of whether property purportedly owned by Brenda and Arnold was actually separate property given to Brenda by her family.

character, by and between Mr. Webre and his late wife's estate[,]" and that Black was "concerned that those transactions were performed based on inaccurate or incomplete information, the origin of which lies with the inventory and federal estate tax return related to the Estate of Brenda V. Webre, Deceased." Black requested a declaratory judgment declaring (1) that the inventory filed in Brenda's estate was incorrect and should be set aside, (2) the proper characterization of community and separate property owned by Brenda and Arnold, (3) the proper funding of all testamentary trusts created by Brenda's will, and (4) the legitimacy, or lack thereof, of exchanges of separate and/or community property between Arnold and Brenda's estate.

During discovery, Sneed and Fenner provided Black with "between 20 or 30" boxes of documents relating to the assets listed in Brenda's inventory. Sneed also provided Black with an accounting of the actions taken by Sneed during the three years that he served as Arnold's attorney-in-fact. No depositions were taken.

Approximately one year after the suit was filed, Black, as guardian for Arnold, and Sneed and Fenner, as representatives of Brenda's estate, participated in mediation before former district court judge, Alvin Zimmerman. After an all-day mediation, the parties reached a mediated settlement agreement. In the settlement, (1) Brenda's and Arnold's homestead was characterized as Brenda's separate property, (2) the characterization of the funds in their Bank of America

4

account was determined according to an analysis provided by accounting expert, Beverly Ryan (whereas the inventory in Brenda's estate had characterized the account as entirely her separate property); (3) several oil and gas interests were characterized as Brenda's separate property, (4) all Chevron stock was characterized as Brenda's separate property; (5) the Markham Salt royalty was determined to be community property; (6) the Exxon stock was determined to be community property; and (7) it recognized that Arnold had sold his a one-quarter interest in the family's "lake place," to Brenda's estate in 2009[2] and provided that Brenda's estate would pay Arnold the fair market value of that interest as of the date of that sale, to the extent that it exceeded what Arnold received in 2009. The settlement agreement also left in place two other transactions[3] consummated in 2009: (1) Texas United Corporation stock was transferred by Brenda's estate to Arnold in exchange for Arnold transferring interest in Texas Brine Company, LLC and United Brine Pipeline Company LLC to Brenda's estate; and (2) Brenda's estate transferred its stock in Universal Mud Disposal, Inc. to Arnold.

Thereafter, Black filed an "Application for Authority to Compromise and Settle the Claims By and Against Robert Wayne Sneed and Robert Fenner and to

---

[2] This is one of the "Sneed-to-Sneed" transactions that appellants complain of because Sneed was acting as Arnold's attorney-in-fact at the same time that he was acting as executor of Brenda's estate.

[3] These two transactions are also what appellants refer to as "Sneed-to-Sneed" transactions.

Execute Settlement Agreement and Release and Other Settlement Documents." Arnold, Jr. and Jo Kathryn responded by filing a "Motion to Remove Guardian of the Estate, Alternatively to Limit the Scope of His Appointment and Appoint an Attorney Ad Litem to Pursue Litigation and for Continuance of Proposed Settlement Agreement."

After a three-day hearing, the trial court signed an "Order Approving and Authorizing Guardian to Compromise and Settle Claims and Overrule Objections to Settlement." The trial court also denied appellants' motion to remove Black as guardian. This appeal followed.

## PROPRIETY OF ORDER APPROVING SETTLEMENT BY GUARDIAN

In their sole issue on appeal, Arnold, Jr. and Jo Kathryn contend that "[t]he probate court judge erred by departing from the guiding rules and principles for assessing proposed settlements and by following a standard of his own."

### *Applicable Law and Standard of Review*

Former Probate Code section 774(a)(4), which was in effect at the time of this suit, provides that "[o]n written application to the court and when a guardian of the estate deems it is in the ***best interest of the estate***, the guardian may, if authorized by an order of the court: . . . make a compromise or a settlement in relation to property or a claim in dispute or litigation; . . . . " Act of 1993, 73rd Leg., R.S., ch. 957, § 1, 1993 Tex. Gen. Laws 4081, 4126; Act of 1997, 75th Leg.,

R.S., ch. 77, § 6, 1997 Tex. Gen. Laws 158, 160; Act of 2001, 77th Leg., R.S., Ch. 305, § 1, 2001 Tex. Gen. Laws 577, 577; Act of 2003, 78th Leg., R.S., ch. 549, § 19, 2003 Tex. Gen. Laws 1864, 1864; repealed by Act of 2011, 82nd Leg., R.S., ch. 823 § 3.02(a), 2011 Tex. Gen. Laws 2094, 2094 (current version at TEX. ESTATES CODE ANN. § 1151.102 (Vernon 2014)).

The trial court expressly found that the settlement was "fair and reasonable and such settlement is in the best interest of Arnold J. Webre, Sr., and his guardianship estate[.]" *Cf. Crouch v. Tenneco, Inc.*, 853 S.W.2d 643, 646 (Tex. App.—Waco 1993, writ denied) (applying abuse-of-discretion standard to court's approval of settlement in context of class action); *Epstein v. Hutchinson*, No. 01-03-00279-CV, 2004 WL 2612258, at *1 (Tex. App.—Houston [1st Dist.] Nov. 18, 2004, no pet.) (mem. op.) (applying abuse-of-discretion standard to approval of settlement agreement by guardian for ward).

A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). A trial court has no discretion in determining what the law is or applying the law to the facts; thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *In re Tex. Dept. of State Health Servs.*, 278 S.W.3d 1, 3 (Tex. App.—Austin 2008, orig. proceeding).

*Analysis*

Appellants argue that the trial court abused its discretion because the trial judge "relied on his own view that litigation should be avoided for any elderly, incompetent ward[,]" and refused to consider evidence (1) about the merits of the underlying suit alleging a breach of fiduciary duty by Sneed, and (2) whether the suit might benefit the ward's estate, as opposed to the ward personally. On the record presented to this Court, we agree.

During the trial, counsel for Sneed mentioned that the assets from Brenda's estate were available to provide for the ward's care in addition to his own assets. The trial court then decided, apparently based on the ward's right to use the assets of Brenda's estate for his care, that the outcome of the lawsuit was irrelevant to the ward's best interests. To that end, the trial court stated:

> [Trial Court]: I believe it was [Sneed's counsel] that said it, that the ward is the sole beneficiary during his life of all of the Brenda estate? . . . .So the issue [of the litigation against Sneed] has nothing to do with the ward. It has to do with your clients after the ward dies.

Appellant's counsel responded, pointing out to the trial court that the Guardian's duty was not only to provide assets sufficient to take care of the ward during his life, but to also protect his legal rights to his property and estate.

> [Appellants' Counsel]: I absolutely disagree with the second part [of the statement referenced above]. Because the law is so clear. That it's the obligation of the guardian to collect all of the ward's property.

8

To which the trial court responded:

> [Trial Court]: But if all of the ward's property is going through Brenda's estate, the ward is being supported by all of the property of the couple.
>
> [Appellants' Counsel]: He is being supported by it.
>
> [Trial Court]: So it doesn't make any difference to the ward, whether he's incapacitated or not, the characterization of all of this property. The ward is being cared for by the entire 100 percent of the estate of Brenda and Arnold. . . . I mean, there's no benefit to Arnold to have this fight.

The trial court repeatedly stated on the record his belief that litigation could not be beneficial to the elderly ward because he was being adequately cared for and that any benefit to the ward personally necessarily trumped a benefit to the ward's estate.

> [Appellants' Counsel]: Your Honor, if I may. The significant impact for Your Honor's review is the ward's rights to his property, legal rights to his property. . . .
>
> [Trial Court]: Why is that important to him? Why is it worth the money?
>
> [Trial Court]: She's dead. So it doesn't make any difference. But he is alive and getting the total benefit of their mutual estate right now.
>
> [Appellants' Counsel]: I would say that he is not. In terms of his care, yes. In terms of vindicating his ownership of his property? No. That's being sacrificed. And if we gauge this on by what he cares about, then we all might as well go home. Because he doesn't know enough to care about anything. That's why we have a guardianship.

[Trial Court]:  The question is:  Is it in his best interest to spend $150,000 on attorney's fees to determine who owns the property?

[Appellants' Counsel]:  And his best interest—

[Trial Court]:  It's not going to make any difference as long as he's alive.

[Appellants' Counsel]:  I'm not talking about the eyes of the law.  I'm talking about caring for an incapacitated person and deciding how most appropriately to spend his money.

[Trial Court]:  That's an issue. That would be an issue for any party in a settlement:  What would it cost for litigation versus what are the benefits of litigation.

In light of his conclusion that the appellant, personally, would not benefit from the lawsuit, the record shows that the trial court was extremely disinclined to consider evidence regarding the merits of the lawsuit when weighed against the cost of litigation in light of the ward's declining age.

[Trial Court]:  I would suggest to you, Counsel, that with an 80-year-old ward, I'm less concerned about the individual detail [of the merits of the settling case] that I am with disposing of this case as soon as possible.  That's been my goal forever . . . I am really lawsuit adverse [sic] with elderly wards. Okay?  It's not in their best interest.  They may not survive the lawsuit.  They certainly won't survive the appeal.  So what are we doing? . . . You don't get to the—what I guess I'm trying to say is, you don't get to proving that the settlement was not correct by proving that each individual part of it was not correct, unless you've got overwhelming evidence.

[Appellants' Counsel]:  And the standards in this instance are whether this particular proposal better serves the interest of the ward as it would in pursuing the lawsuit?

10

[Trial Court]: Pursuing a lawsuit? Pursuing a lawsuit for an 80-year-old man where the lawsuit is going to take months to try. . . . that lawsuit, as I said, I am lawsuit adverse [sic] for wards because they can't participate. So they can't say what they wanted to do. So the jury is trying to decide what they wanted to do without any input from them whatsoever, except the totality of the documents that they signed when they had capacity and it's just not a useful investigation.

The suit being settled involved fiduciary responsibilities owed by Sneed to the ward. Indeed, Sneed had accepted a fiduciary role with respect to Arnold despite the fact that he had separate responsibilities in the same transactions as the executor and trustee of Brenda's estate. Texas courts have applied a presumption of unfairness to transactions between a fiduciary and a party to whom he owes a duty of disclosure, thus casting upon the profiting fiduciary the burden of showing the fairness of the transactions. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507–08 (Tex. 1980); *Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Collins v. Smith*, 53 S.W.3d 832, 840 (Tex. App—Houston [1st Dist.] 2001, no pet.). The fiduciary must show proof of good faith and that the transaction was fair, honest, and equitable. *Lee*, 286 S.W.3d at 21; *Collins*, 53 S.W.3d at 840.

Despite the presumed unfairness of the Sneed-to-Sneed transactions, the trial judge made clear that he did not want to hear evidence about the fairness of the proposed settlement because he was philosophically opposed to litigation conducted on behalf of elderly, incompetent wards. Indeed, when appellants called

11

an expert to testify about the fairness of one of the challenged transactions, the trial court concluded that the expert's testimony was irrelevant, stating, "I'm going to exclude the witness. If we were in a trial where we were trying each individual thing, it might be relevant. But, I'm trying the overall fairness and the variety of the settlement. I'm going to exclude the witness." When appellants tried to address the merits of the underlying lawsuit and probable recovery on the proper characterization of the couple's home, the trial court stated, "the ward can live there for his entire life without regard to the characterization because he's the surviving spouse. So there's really no issue on the house . . . ."

When the trial judge finally ruled that he would approve the settlement, he stated on the record:

> [T]he cost of litigation and what I've seen of litigation, it's not in the ward's best interest. I don't think the ward would survive the litigation. I don't even think the ward would survive until we get to trial. Because if we do the discovery you want to do and then we'll be done and we bring in all of the experts and do all that you want to do and Mr. Sneed—Mr. Webre is—he's the beneficiary of her estate right now, lifetime beneficiary as I understand it. And so his money is paying for her lawyers and his money is paying for his—the guardian's lawyers. So that's affecting his estate as well, even if ultimately there's some change in this deal, ultimately, some part of it is set aside, but I just don't think it's in his best interest to continue the litigation. So I'm going to approve the settlement.

That the ward is unable to participate in, and may not survive the underlying lawsuit, does not excuse a guardian from determining, or a trial court from reviewing, a settlement in which the guardian evaluated whether a transaction with

12

a fiduciary was presumptively unfair. *See Moore*, 595 S.W.2d at 510 (holding that established rule of fiduciary fairness applied even when surviving principal of fiduciary had died; to hold otherwise would frustrate principal's testamentary intent). The same holds true here. The fairness of Sneed's transactions to the ward's estate is one of the critical components of the underlying lawsuit. To approve a settlement without allowing both sides to present evidence regarding whether the Guardian properly evaluated this critical issue would necessarily affect the ultimate size of the ward's estate and any testamentary dispositions he had made.

The law on a guardian's duty to a ward is clear—when a guardian of the estate deems it is in the ***best interest of the estate***, the guardian may, if authorized by an order of the court, make a compromise or a settlement in relation to property or a claim in dispute or litigation. *See* former TEX. PROB. CODE ANN. § 774(a)(4) (repealed 2014). A trial court abuses its discretion if it clearly fails to correctly analyze or apply the law. *In re Tex. Dept. of Health Servs.*, 278 S.W.3d at 3. Here, the trial court did not correctly analyze or apply the law because it refused consider whether the settlement was in the best interest *of the ward's estate*, focusing instead only on whether the ward's personal needs were being met and whether the elderly ward would survive the litigation. Instead of requiring some showing that Sneed had shown, and the Guardian had properly considered and decided, that the

challenged transactions were fair, the trial court actually excluded evidence offered to challenge the fairness of those transactions on the ground that it was irrelevant.

We are not holding that, when requested to do so, a trial court must allow a full-blown trial on the merits of a challenged lawsuit and each individual portion of the lawsuit being settled. We hold only that a trial court may not refuse to consider evidence balancing the merits of the lawsuit and how those merits could affect a ward's estate with the costs of pursuing the litigation simply because the ward is elderly and unable to participate. Because the trial court did so in this case, we sustain the appellants' sole issue on appeal.

## CONCLUSION

We reverse the trial court's judgment and remand the case.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.