**Opinion issued January 28, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00779-CV

_____

**KENNETH NNAKA, Appellant**

**V.**

**BLANCA MEJIA INDIVIDUALLY AND A/N/F OF W.A., A MINOR CHILD, AND HALLMARK COUNTY INSURANCE CO., Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-74062**

---

## MEMORANDUM OPINION

Appellant Kenneth Nnaka challenges the trial court's post-judgment imposition of sanctions against him in connection with litigation arising out of the personal injury case of appellee Blanca Mejia, individually and a/n/f of W.A. In one of his appellate issues, Nnaka asserts that the trial court erred in imposing

sanctions because Nnaka did not engage in any sanctionable conduct. Nnaka also attempts to appeal from the trial court's final judgment, rendered prior to the sanctions order, to challenge the trial court's resolution of Nnaka's claim for attorney's fees in connection with Mejia's personal injury case and his separate claims against appellee Hallmark County Insurance Co., the insurance company that insured the defendant in Mejia's personal injury case.

Because we conclude that he failed to file a notice of appeal from the final judgment, Nnaka never invoked this Court's jurisdiction over that judgment and we cannot consider those complaints on appeal. We further conclude that the trial court did not abuse its discretion in imposing sanctions against Nnaka. Accordingly, we affirm the trial court's sanctions order.

### Background

Mejia and her minor child were injured in a crash between their vehicle and a tractor trailer driven by Kenneth Washington and insured by Hallmark County Mutual Insurance Co.

Mejia retained Nnaka to represent her with regard to the crash, and she signed a contingency fee agreement for 33.3% of any eventual damages recovered. Mejia testified before the trial court that she attempted on numerous occasions to meet or speak with Nnaka, but she was unable to do so. She obtained a copy of the police report and reported the claim to Hallmark herself. She also attempted to

2

obtain medical treatment for back injuries sustained in the crash, but the medical providers refused to treat her without authorization from Nnaka or his firm. Mejia requested the treatment authorizations, but she never received them.

Mejia then terminated her relationship with Nnaka and retained Jeffrey Stern from the Stern Law Group. She entered into another contingency fee agreement for 40% of any eventual recovery with Stern. Stern filed the lawsuit against Washington, conducted discovery and otherwise litigated the case, paid some medical costs for Mejia to receive treatment while the suit was pending, and ultimately obtained a settlement in favor of Mejia and her minor child that was paid by Hallmark.

Following the settlement of Mejia's personal injury claims, Nnaka sought a portion of the attorney's fees from Stern. Stern intervened in Mejia's personal injury case and named Nnaka as a party. Stern sought a declaratory judgment to resolve Nnaka's claim to a portion of the attorney's fees. Stern asserted that Mejia had terminated Nnaka for cause and that Nnaka had not provided any significant legal services during the six to eight weeks that he was Mejia's attorney.

Nnaka & Associates, PLLC, answered Stern's petition in intervention with a general denial, stating that the firm was "incorrectly named as 'Kenneth Aghadi Nnaka.'" Nnaka & Associates also filed a separate suit in a different district court against Hallmark asserting causes of action for tortious interference with contract,

fraud, and quantum meruit in connection with Hallmark's paying the settlement to Stern on Mejia's behalf.

Hallmark filed an unopposed motion to consolidate Nnaka & Associate's separate claims against it with Mejia's personal injury suit, which the trial court granted. The parties waived a jury trial and stipulated that the trial court could resolve all the issues necessary to render final judgment on the settlement agreement, the related dispute over the attorney's fees, and Nnaka's separate claims against Hallmark based on a hearing held on July 12, 2018. At this hearing, both Mejia and Nnaka testified and the parties presented documents and other evidence to the trial court.

The evidence showed that Mejia first contacted Nnaka's office on or around June 21, 2016, a few days after the accident. Mejia testified about the services Nnaka performed on her behalf—testifying that she had been unable to meet with him, had called on several occasion and had been told that he was out of the country, and had been unable to receive medical treatment due to his office's failure to provide proper documentation to her providers. Mejia testified that she had obtained the police report herself and had reported the crash to Hallmark herself before she terminated Nnaka's representation on August 24, 2016, and retained Stern. Nnaka testified that he had provided services to Mejia, including dealing with medical care providers, obtaining medical records, and drafting

pleadings. He provided a billing statement reflecting 54.5 hours of attorney work and 42 hours of paralegal work, including multiple contacts and meetings with or on behalf of Mejia, for a total of $29,462.50 in fees.

At the end of the July 12, 2018 hearing, the trial court made an oral pronouncement finding that Mejia had terminated Nnaka for cause and that the value of his legal services to her was $0. The trial court further pronounced that the evidence taken at the hearing had finally resolved all other pending claims, which included Nnaka's separate claims against Hallmark. The trial court indicated that it would incorporate these pronouncements into a final judgment as soon as the settlement with regard to the minor child could be finalized and approved.

Following this hearing, on July 16, 2018, based on its consideration of "Kenneth Nnaka's sworn testimony and his 'Statement for Professional Services Rendered [to Mejia]' introduced into evidence in this case," the trial court ordered Nnaka "together with his paralegal, Jessica Mandujano," to "appear and show cause why he should not be sanctioned by the Court, or held in contempt of court." The trial court further ordered Nnaka "to bring his entire 'Mejia' client file to the hearing, including any time records, time entries, billing records, and all other documents related to this case."

On July 19, 2018, the trial court held a hearing on the issue of sanctions. Both Nnaka and his paralegal Mandujano appeared and testified under oath

5

regarding the legal services rendered to Mejia and the billing statement that was filed with the court. Nnaka's entire file and the billing statement itself was admitted into evidence at the hearing. The trial court reminded the parties on the record that all of the other issues in the case had been resolved at the July 12, 2018 hearing. The trial court further expressed concern regarding the nature of Nnaka's billing practices and stated that it had not yet decided whether to sanction Nnaka, report him to the State Bar, or both.

On July 20, 2018, the trial court rendered a final judgment approving the final settlement of Mejia's and W.A.'s personal injury claims. The trial court further found that Mejia had terminated Nnaka's representation for cause and that the value of Nnaka's legal services to Mejia was $0. The trial court rendered a take-nothing judgment on Nnaka's additional claims against Hallmark.

On July 24, 2018, the trial court signed its order imposing sanctions on Nnaka. The order set out the background of the case, including the fee dispute between Nnaka and Stern and Nnaka's separate claims against Hallmark, and it expressly referenced the court's final judgment that Nnaka take nothing on his affirmative claims for relief, the findings that Mejia had terminated her fee agreement with Nnaka for "good and just cause" and that the value of the reasonable and necessary attorney's services Nnaka had performed on Mejia's behalf "was $0.00." The order then made findings of fact relevant to the sanctions

6

hearing that had been held on July 19, 2018. The trial court further found that "it is appropriate to assess sanctions against Kenneth Nnaka for his knowing violations of the Rules of Civil Procedure and for his interference with the Court's orderly and expeditious administration of justice." The trial court ordered Nnaka to

1. personally attend a continuing legal-education course (CLE) of at least 4.0 hours of ethics that addresses ethics in billing practices;

2. provide the Court with written proof of such attendance within 120 days of the signing of this Order, and not later than November 21, 2018; and

3. pay, as a sanction, $2,500.00 into the registry of the Court within 30 days of the signing of this Order, and not later than August 23, 2018.

Nnaka filed a notice of appeal stating that he wished to appeal this sanctions order, and this appeal followed.

## Jurisdiction and Scope of Appeal

Appellee Hallmark first asserts that this Court lacks appellate jurisdiction to consider Nnaka's issues challenging the July 20, 2018 final judgment.

## A. Jurisdictional Background

The trial court signed the final judgment on July 20, 2018, resolving all of the issues in the litigation, including the fee dispute between Nnaka and Stern and Nnaka's claims against Hallmark. The trial court signed the order sanctioning Nnaka on July 24, 2019.

7

Nnaka filed his notice of appeal on August 28, 2018, outside the thirty-day deadline but within the time for an implied extension of time to file his notice of appeal:[1]

> NOTICE is hereby given that KENNETH NNAKA, Intervenor and the former attorney for Plaintiff, desires to appeal all portions of the appealable Sanctions ordered by this court, against Kenneth Nnaka. . . . The Sanction Order appealed hereto was entered on July 24, 2018[.]

Nnaka subsequently filed a brief in this Court arguing that the trial court erred by disregarding his claims against Hallmark and rendering a take-nothing judgment, that the trial court erred in rendering judgment that Nnaka was not entitled to any portion of the attorney's fees in Mejia's case, and that he did not commit any sanctionable conduct. Hallmark responded in its appellate brief that Nnaka had appealed only the sanctions order, so this Court lacked appellate jurisdiction over Nnaka's appeal to the extent that he challenged the trial court's rulings on the merits of the case. Mejia and her counsel waived their right to file a brief and instead joined Hallmark's brief.

After the briefs were filed, Nnaka moved to amend his notice of appeal. The amended notice stated in relevant part, "KENNETH NNAKA, NNAKA & ASSOCIATES, PLLC, and LAW OFFICES OF NNAKA & ASSOCIATES,

---

[1]     *See* TEX. R. APP. P. 26.1 (setting time for perfecting appeal), 26.3 (permitting extension of time to file notice of appeal); *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997).

PLLC, hereby give notice of their intent to appeal all of the trial court's appealable order signed by the [trial court] on July 24, 2018." Hallmark objected to this motion to amend, asserting, among other grounds, that its interest in the case would be harmed by allowing Nnaka to amend his notice of appeal to include an entirely new appealable order than the one he initially filed. We carried this motion with the case and resolve it now.

**B.    Analysis**

There were two appealable instruments in this case. The first is the final judgment, signed by the trial court on July 20, 2018. This judgment disposed of all of the claims and all of the parties, including Nnaka's claim that he was entitled to a portion of the attorney's fees from Mejia's personal injury settlement and Nnaka's separate claims against Hallmark for tortious interference with contract, fraud, and quantum meruit.[2] *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205–

---

[2]    Nnaka argues in his reply brief that "[t]he trial court never considered [his] suit against Hallmark" and that "[t]here is no order from the trial court stating that Nnaka should take nothing against [Hallmark]." Nnaka concludes that "[t]he order to take nothing is part of the sanctions against Nnaka." This is incorrect. At the hearing on July 12, 2018, all parties presented evidence regarding the attorney's fee dispute and other pending claims. For example, Hallmark's attorney questioned Mejia, who testified that, as far as she was aware, Nnaka did not complete any work on her case and that all of the work was done by Stern and his firm. Hallmark's attorney asked Nnaka if he knew why Hallmark had no record of his letter of representation of Mejia, and Nnaka replied that he had "confirmation that it was sent and delivered," so he did not know why it was not in the file. Hallmark's attorney also questioned why Nnaka continued to bill Mejia for legal work after she had terminated his representation. This evidence adduced at the hearing was relevant to determining whether Nnaka had a contract with which

9

06 (Tex. 2001) (holding that judgment or order is final for purposes of appeal when it disposes of all pending claims and parties). The fact that the issues of potential sanctions against Nnaka remained pending does not prevent the July 20, 2018 judgment from being final and appealable. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000) ("[A] judgment does not have to resolve pending sanctions issues to be final."); *Mantri v. Bergman*, 153 S.W.3d 715, 717 (Tex. App.—Dallas 2005, pet. denied) ("Unlike a pending cause of action, a pending motion for sanction does not make interlocutory an otherwise-

Hallmark could have interfered, whether Hallmark had committed any fraud against Nnaka, and whether Nnaka was entitled to any recovery from Hallmark on a quantum meruit theory for legal services that he had rendered on Mejia's behalf.

Finally, the July 20, 2018 final judgment expressly ruled on Nnaka's claim for attorney's fees and his separate claims for affirmative relief against Hallmark:

> After hearing the evidence adduced [at the July 12, 2018 hearing], and the arguments of counsel, the Court rendered a take-nothing judgment on all of NNAKA's claims for affirmative relief, determined that MEJIA had just and good cause to terminate her fee agreement with NNAKA, and determined that the value of reasonable and necessary attorney's fees NNAKA performed on MEJIA's behalf are $0.
>    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all claims for affirmative relief brought by KENNETH NNAKA are hereby denied in all respects. It is the judgment of this Court that NNAKA take nothing against any other party to this suit.

The July 24, 2018 sanctions order repeated the facts of the case and referred to the trial court's previously rendered final judgment, but the sanctions order itself did not address the merits of any of Nnaka's claims. Rather, the sanctions order addressed only the trial court's imposition of sanctions against Nnaka. Thus, the record does not support Nnaka's contention that he was denied due process and did not have an opportunity to be heard on his claims for attorney's fees and additional affirmative relief against Hallmark. Those claims were heard and resolved by the trial court in its July 20, 2018 final judgment.

10

final judgment"; also holding that if motion for sanctions remains pending when final judgment is signed, trial court retains jurisdiction to rule on that motion until expiration of its plenary power).

The second appealable order is the July 24, 2018 order sanctioning Nnaka. This order reduced the sanctions against Nnaka to a judgment and was itself appealable. *See Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied) ("A post-judgment imposition of monetary sanctions, however, is a final, appealable judgment 'when the sanctions are reduced to a judgment and execution is authorized thereon.'") (quoting *Arndt v. Farris*, 633 S.W.2d 497, 500 n.5 (Tex. 1982)); *see also Cook v. Stallcup*, 170 S.W.3d 916, 920 (Tex. App.—Dallas 2005, no pet.) ("Post-judgment orders embodying awards to claimants or enforcing the court's judgment itself are appealable orders; they function like judgments.").

Nnaka's original notice of appeal expressly stated that he was appealing the July 24, 2018 sanctions order. This notice of appeal thus invoked this Court's jurisdiction over all parties to the sanctions order. *See* TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). Nnaka subsequently filed briefing asking, in part, that this Court address issues resolved in the July 20, 2018 final judgment. Because no notice of appeal from that

11

judgment was ever filed, however, this Court's jurisdiction over the final judgment was never invoked. *See id.*

Nnaka argues that his notice of appeal of the July 24, 2018 sanctions order also invoked our jurisdiction over the July 20, 2018 final judgment. He appears to rely on cases holding that interlocutory orders are merged into the final judgment and that appellants need not list every interlocutory order that they intend to challenge as long as the notice of appeal identifies the final order or judgment. *See, e.g.*, *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (holding that appellants "were not required to state in their notice of appeal that they were challenging the interlocutory order granting special exceptions" but only "the date of the judgment or order appealed from—in this instance the order dismissing their suit"); *Wall v. State Farm Lloyds*, 573 S.W.3d 281, 289 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Our jurisdiction over the appeal from the final judgment is unimpaired by the notice of appeal's identification of an interlocutory order that would not be appealable in the absence of a final appealable judgment."); *Lee v. Lee*, 528 S.W.3d 201, 211 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("[B]y stating in her notice of appeal her intent to appeal the trial court's final order signed on March 2, 2016, [appellant] invoked our jurisdiction not only to review that order but also to address interlocutory rulings that were merged into it."). In this case, however, there is no interlocutory order. The July 20 and July 24

12

orders are separately appealable, and the July 24 sanctions order adjudicates a separate issue than those addressed in the final judgment.

Nnaka argues that, even if the notice of appeal was defective, it nevertheless invoked this Court's jurisdiction and that his notice of appeal conferred jurisdiction on this Court because it was filed in a bona fide attempt to invoke our appellate jurisdiction. *See Warwick Towers Council v. Park Warwick LP*, 244 S.W.3d 838, 839 (Tex. 2008) (per curiam) (holding that, in determining presence of jurisdiction, appellate courts do not look to form or substance of instrument filed but rather consider whether it reflected a bona fide attempt to invoke appellate jurisdiction). But this is not a case in which there was an omission or defect in Nnaka's notice of appeal. Nnaka filed a notice of appeal from the sanctions order, but Nnaka has not filed any notice of appeal specifying the intent to appeal the July 20, 2018 final judgment. We conclude that filing a notice appeal from the July 24, 2018 sanctions order is not a "bona fide attempt to invoke appellate court jurisdiction" over the July 20 final judgment. *See id.*; *see also Jones v. Port Arthur Indep. Sch. Dist.*, No. 09-16-00374-CV, 2018 WL 3149162, at *1 n.2 (Tex. App.—Beaumont June 28, 2018, no pet.) (mem. op.) (declining to address issue related to order that was not identified in notice of appeal).

13

Finally, Nnaka moved to amend the notice of appeal to include his related business entities Nnaka & Associates, PLLC, and Law Offices of Nnaka & Associates, PLLC. The rules permit amendment of the notice of appeal:

> An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended notice is subject to being struck for cause on the motion of any party affected by the amended notice. After the appellant's brief is filed, the notice may be amended only on leave of the appellate court and on such terms as the court may prescribe.

TEX. R. APP. P. 25.1(g). Because Nnaka waited to seek leave to amend his notice of appeal until after both his and Hallmark's briefs had been filed, and after Mejia waived her right to file a brief and instead joined Hallmark's brief, he must obtain the leave of this Court to make any amendment. *See id.* We decline to grant leave to amend here.

This is not a case in which there has been a defect or omission that can be corrected by amendment *See, e.g.*, *Sweed v. Nye*, 323 S.W.3d 873, 874–75 (Tex. 2010) (per curiam) (holding that notice of appeal that did not contain all information necessary for notice of restricted appeal nevertheless invoked appellate court's jurisdiction); *City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992) (seeking to correct typographical errors); *Taylor v. Margo*, 511 S.W.3d 117, 120 (Tex. App.—El Paso 2014, order) (allowing party to amend notice of appeal to include amended version of originally identified order). Nnaka failed to file a

14

notice of appeal from the July 20, 2018 final judgment, and the time to do so has passed. *See* TEX. R. APP. P. 26.1 (setting out deadlines for perfecting appeal); *see also Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 764–65 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that when notice of appeal failed to challenge "the operative order," appellant had failed to perfect appeal as to that appealable order; further holding that because time for perfecting appeal from operative order had "long since expired," appellant failed to invoke appellate court's jurisdiction as to that appealable order).

Finally, the amended notice continues to identify only the July 24, 2018 sanctions order as the order being appealed from, so it would not correct the jurisdictional defect identified by Hallmark's briefing. And even if we were to construe Nnaka's amended notice as attempting to add a challenge to the July 20, 2018 final judgment, such an amendment would be improper. Multiple Texas courts have held that a party may not amend its notice of appeal to challenge an entirely different order than the one named in the original notice of appeal. *See, e.g., Fain v. Georgen*, No. 03-17-00313-CV, 2017 WL 4766654, at *3 (Tex. App.—Austin Oct. 19, 2017, no pet.) (mem. op.); *Oak Creek Homes, LP v. Moore*, No. 11-15-00291-CV, 2016 WL 6998949, at *2 (Tex. App.—Eastland Nov. 30, 2016, no pet.) (mem. op.); *Perez v. Perez*, No. 09-06-521-CV, 2007 WL 5187895, at *6–7 (Tex. App.—Beaumont May 22, 2008, pet. denied) (mem. op.); *Wright v.*

*Estate of Wright*, No. 03-07-00618-CV, 2008 WL 1753616, at \*2 (Tex. App.—Austin Apr. 18, 2008, no pet.) (mem. op.); *Rainbow Grp., Ltd. v. Wagoner*, 219 S.W.3d 485, 492–93 (Tex. App.—Austin 2007, no pet.); *Thomas v. Thomas*, No. 14-02-01286-CV, 2003 WL 1088220, \*1–2 (Tex. App.—Houston [14th Dist.] Mar. 13, 2003, no pet.) (mem. op.) (per curiam). Accordingly, we deny Nnaka's motion to amend his notice of appeal.

We conclude that Nnaka failed to invoke this Court's jurisdiction over the July 20, 2018 final judgment, and, thus, any complaints on appeal relating to that judgment fall outside the scope of this appeal. We can, however, address Nnaka's challenge to the trial court's July 24, 2018 sanctions order.

## Sanctions

Nnaka argues that the trial court erred (1) in ordering him to attend an additional continuing legal education course and to pay a $2,500 fine and (2) in reporting Nnaka to the State Bar of Texas because he did not commit any sanctionable conduct.

### A. Standard of Review

In reviewing the trial court's sanction orders, we "must independently review the entire record to determine whether the trial court abused its discretion." *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Sims v. Fitzpatrick*, 288 S.W.3d 93, 105 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

16

The trial court here found that Nnaka violated Rule of Civil Procedure 13, and it referenced its inherent authority to sanction attorneys. Rule 13 authorizes sanctions for "groundless" and bad-faith pleadings, motions, and other papers. *See* TEX. R. CIV. P. 13; *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 362–63 (Tex. 2014). Rule 13 contains a presumption that documents are filed in good faith, and it "does not permit sanctions on the issue of groundlessness alone. Rather, the filing in question must be groundless and also either brought in bad faith, brought for the purpose of harassment, or false when made." *Nath*, 446 S.W.3d at 362–63.

Furthermore, "Texas courts "have the inherent power to sanction for an abuse of the judicial process that may not be covered by any specific rule or statute." *See Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 524 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co.*, 101 S.W.3d 525, 540–41 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The inherent power to sanction "exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *Houtex Ready Mix Concrete & Materials*, 226 S.W.3d at 524. "In applying its inherent power to impose sanctions, a trial court must make findings to support its conclusion that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions." *Id.*

17

A trial court does not abuse its discretion in imposing sanctions if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

## B.    Analysis

The trial court here gave notice to Nnaka of its intention to impose sanctions, and it allowed him an opportunity to be heard. Following the sanctions hearing, the trial court found that Nnaka:

1. billed for services he did not perform, on dates he could not have performed services, and by overstating the time he allegedly spent performing services;

2. charged an unconscionable fee for work he did not perform and for overstating the work he did perform;

3. knowingly made false statements of material fact to the Court;

4. offered testimony and documentary evidence (the Fee Statement) he knew to be false;

5. offered evidence (the Fee Statement) without making a reasonably diligent inquiry to determine whether it was accurate;

6. violated the Texas Rules of Civil Procedure by filing pleadings/papers not in good faith. *See* Tex. R. Civ. P. 13; and

7. interfered with this Court's orderly and expeditious administration of justice by advancing claims he knew to be false.

The trial court thus imposed sanctions on Nnaka, requiring him to pay $2,500 into the registry of the court and ordering him to attend continuing education in ethics relating to billing practices.

The evidence supported these determinations. The Fee Statement introduced into evidence at the sanctions hearing—the same statement that Nnaka had relied on in seeking attorney's fees in the July 12 hearing—indicated that Nnaka sought approximately $29,462.50 in fees for legal services he allegedly performed during the nine-week period he represented Mejia. At the sanctions hearing, the trial court also compared the Fee Statement and case file submitted by Nnaka to the testimony of both Nnaka and his paralegal and the trial court's own knowledge of the case to identify discrepancies and inconsistencies.

For example, the Fee Statement showed that Nnaka billed Mejia for eleven hours of work over several separate days after she had terminated his representation. The statement further reflected that Nnaka spent three hours at his rate of $425 per hour creating the Fee Statement, but Nnaka testified at one point that his secretary created it, and he did not "vet it very, very well," and then later testified that he thought it was right to include the three hours because "we have to go back to the file to look at everything we did." The Fee Statement included entries for services that were not supported by any other evidence such as Nnaka's activity log or calendar, but they were instead based solely on Nnaka's attempts to recall the services he had completed for Mejia and Nnaka himself acknowledged that at least some of the dates "may be wrong." The trial court also noted that Nnaka had billed Mejia for a hearing on a day that no hearing had been held.

19

At one point in the sanctions hearing, the trial court asked, "Do you think it's an okay practice to not keep any time records and then if you need a bill or you have a quantum meruit claim, then you create a bill and you just choose dates with no supporting documentation?" And Nnaka replied, "Your Honor, that was my fault, because it was a contingency fee case. To be quite honest with you, Your Honor, this is the first time I'm having to do this. Most of my cases are contingency fee or a flat rate." Nnaka testified that these and other discrepancies were errors "but there was no intention from [his] part to deceive." Nnaka explained to the trial court that some of the billings reflected the incorrect dates or periods of time. However, the trial court, as the fact finder, was entitled to disbelieve all or any portion of Nnaka's testimony on these matters. *See Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.) ("In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given to their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony.").

Accordingly, we conclude that the trial court did not abuse its discretion in determining that Nnaka engaged in sanctionable conduct because there was at least some evidence to support the trial court's imposition of sanctions. *See Villa*, 299 S.W.3d at 97. We overrule Nnaka's complaint on appeal.

20

**Rule 45 Sanctions**

Finally, Hallmark asks this Court to provide sanctions against Nnaka pursuant to Rule of Appellate Procedure 45 because Nnaka's appeal was frivolous.

Rule 45 provides that if a court of appeals determines an appeal is frivolous, it may award a prevailing party just damages. *In re Willa Peters Hubberd Testamentary Trust*, 432 S.W.3d 358, 369 (Tex. App.—San Antonio 2014, no pet.). "Whether to grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances." *Id.*; *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Notably, Rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Woods v. Kenner*, 501 S.W.3d 185, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

After a review of the record, briefing, and other papers filed in this Court, including the trial court's order imposing sanctions on Nnaka, we deny Hallmark's request that we impose sanctions against Nnaka pursuant to Rule 45.

## Conclusion

We hold that we have no jurisdiction over the trial court's July 20, 2018 final judgment. We affirm the trial court's July 24, 2018 sanctions order.


Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.