**Petition for Writ of Mandamus Denied and Opinion filed May 10, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00499-CV

---

### IN RE AMEGY BANK NATIONAL ASSOCIATION, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-01891**

---

## OPINION

On September 3, 2021, relator Amegy Bank National Association filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. The underlying case involves a receivership in which the master-in-chancery issued two reports. The first master report concerns the non-exempt status of property belonging to real party in interest Emmanuel Megrelis, and the second master report found Megrelis in contempt for violating the turnover

order. The trial court approved both reports in two orders, and Megrelis did not appeal either order. The trial court set the reports for trial. Amegy contends that the trial court lost its plenary power to conduct a trial on the master's reports after Megrelis did not appeal the orders approving the reports.

Amegy asks this court to prohibit the Honorable Dedra Davis, presiding judge of the 270th District Court of Harris County, from conducting a trial on the issues presented in the master's reports and disturbing the orders approving the master's reports. We deny the petition.

## BACKGROUND

On October 1, 2010, the trial court signed an agreed final judgment against Megrelis and GB Foods, Inc. in favor of Amegy for actual damages, prejudgment interest, post-judgment interest, and attorney's fees. The trial court ordered that Amegy satisfy the judgment by seizing and selling property specifically identified in the judgment and "all other non-exempt property" of GB Foods and Megrelis. On April 1, 2011, the trial court signed a judgment nunc pro tunc to correct the spellings of Megrelis's name. The trial court also signed an order appointing Riecke Baumann receiver to take possession of and sell real and personal non-exempt property of GB Foods and Megrelis pursuant to the Texas Turnover Statute. Additionally, the trial court appointed Baumann master-in-chancery with the power to order the production of evidence, schedule hearings, and direct parties and witnesses to give testimony.

On April 20, 2012, Baumann filed his first master's report, finding that Megrelis had abandoned property located at 4701 Inker Street (the "Inker Street

2

property") in Houston and had not claimed the property as being exempt from judgment enforcement.

On August 9, 2012, Megrelis objected to a proposed supplement to the April 1, 2011 order appointing the receiver and master. Megrelis objected that Baumann's authority as receiver was too broad and to Baumann's continuing to serve as master in chancery in the absence of a showing of the exceptional nature of this case. Asserting that Baumann, as receiver, had acted beyond the scope of the trial court's orders, Megrelis further asked the trial court to supplement the turnover order to provide for the application of the Texas Rules of Civil Procedure to post-judgment discovery and to Beaumann. Megrelis also filed a designation of exempt property, which included the Inker Street property.

After a status conference on June 12, 2013, the trial court found that Megrelis did not file an objection to the first master's report and signed the order approving the report. Megrelis did not file any post-judgment motions or appeal the order approving the first master's report

On July 25, 2016, Baumann filed his second master's report, which addressed events that took place after the approval of the first master's report. Baumann found that Megrelis had made no effort to pay the judgment despite having the ability to do so and was in contempt of the turnover order and should be attached until he purged himself of contempt. Megrelis filed an answer to the second master's report on December 19, 2017, asserting that the Inker Street property is his homestead and he did not hide money from the receiver.

3

On August 29, 2019, the trial court signed the order approving the second master's report and adopting the report's facts and conclusions as those of the court. Megrelis did not file any post-judgment motions or appeal the August 29, 2019 order.

On November 26, 2019, Baumann filed an application to sell the Inker Street property, stating that the first master's report had conclusively found that the Inker Street property is non-exempt property. The trial court, on June 22, 2020, signed an order prohibiting Megrelis from arguing or mentioning that the Inker Street property is exempt property. On July 6, 2020, Baumann filed an amended application to sell the receivership property, adding that the trial court had ordered Megrelis, on June 22, 2020, not to argue that the Inker Street property was his homestead "because the first Master's report found that it is not an exempt homestead and the fact issue is conclusive an [sic] all appellate time periods expired years ago." The next day, Megrelis filed a motion for reconsideration of the trial court's June 12, 2013 and August 29, 2019 orders approving the master's reports because, among other arguments, the reports were not final and Megrelis was entitled to a jury trial.

On August 2, 2021, the trial court held a status conference and scheduled a bench trial on the master's reports for September 8, 2021. On August 10, 2021, Amegy filed a motion for affirmation that the trial court did not have jurisdiction to reconsider its prior orders approving the master's reports because its plenary power expired 30 days after the orders were signed. At an August 24, 2021 hearing, the trial court confirmed that the September 8, 2021 bench trial would be a trial on the two master's reports and denied Amegy's motion for affirmation.

4

## STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

Courts are to assess the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balancing depends in large measure on the circumstances presented, courts look to principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). Whether an appeal amounts to an adequate remedy depends heavily on the circumstances. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). Mandamus is available to correct a void order, *i.e.*, an order the trial court had no power render. *Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding); *see also In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam) (stating relator need not show that it does not have adequate remedy by appeal when complained-of order is void).

5

Amegy contends that the orders approving the master's reports were final orders, the trial court's plenary power had expired thirty days after approving the orders, and the trial court lacks jurisdiction to reconsider the orders. Megrelis, on the other hand, argues that the orders master's reports are not final orders because they do not dispose of all pending parties and claims.

A trial court generally has plenary power to modify its judgment for thirty days after the judgment is signed and, in some cases, that power may be extended up to an additional seventy-five days. Tex. R. Civ. P. 329b(c), (d), (e), (g). Even after its plenary power has expired, however, a trial court retains the power to enforce its judgments. *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) (orig. proceeding); *see also Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) ("Generally, every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments."). This power extends to enforcement of the judgment by execution or other appropriate process when necessary, *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 197 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing Tex. R. Civ. P. 621), and can last until the judgment is satisfied. *Alexander Dubose Jefferson & Townsend LLP*, 540 S.W.3d at 581.

A court can appoint a receiver to assist with enforcement and will retain continuing jurisdiction and control over the receiver and receivership property until the proceeding is concluded. *Gutman v. De Giulio*, No. 05-20-00735-CV, 2022 WL 574968, at *3 (Tex. App.—Dallas Feb. 25, 2022, no pet.) (mem. op.). The trial court's authority also includes modifying its previous orders to respond to new

6

circumstances. *Id.* Even after discharging a receiver, the trial court has the power to continue the receivership if circumstances require. *Hill v. Hill*, 460 S.W.3d 751, 764 (Tex. App.—Dallas 2015, pet. denied).

Generally, a judgment must dispose of all legal issues between or among all parties to a final judgment. *Lee v. Lee*, 528 S.W.3d 201, 208 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). There are exceptions to the general rule that a final, appealable judgment must dispose of all issues and all parties. *Id.* "[C]ertain postjudgment orders, such as turnover orders and orders that resolve certain discrete matters in receivership proceedings, may be final for purposes of appeal, even if these orders do not dispose of all pending parties and claims." *Fischer v. Ramsey*, No. 01-14-00743-CV, 2016 WL 93512, at *2 (Tex. App.—Houston [1st Dist.] Jan. 7, 2016, no pet.) (mem. op.); *see also Huston v. Fed. Deposit Ins. Co.*, 800 S.W.2d 845, 847 (Tex. 1990) ("A trial court's order that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable.").

**First Master's Report**

Baumann found in the first masters report that the Inker Street property was non-exempt. The trial court approved the first master's report. The first master's report resolved a discrete issue when it determined that the Inker Street property was not Megrelis's homestead. *See Lee*, 528 S.W.3d at 208 (holding trial court's order approving receiver's sale resolved a discrete issue and, therefore, was a final, appealable judgment); *Fischer*, 2016 WL 93512, at *3 (holding trial court's order, which adjudicated property as homestead, non-exempt property, granted receiver possession and control, authorized its sale, with only final closing of specific sale

7

subject to approval, was final, appealable order). Therefore, the order was final and appealable.

While we agree with Amegy that the first master's report resolved a discrete issue and was final and appealable, we do not agree that the trial court lost its plenary power over the order approving the first master's report after Megrelis did not appeal the order.

The right to appeal the order of receivership must be exercised within twenty days after the order is entered, otherwise an untimely appeal will be dismissed. *See Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at *23 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem op.) ("Given the nature of a receivership, a party's ability to seek termination or modification, and the policy reasons behind the twenty-day time limit to appeal, we conclude that the Fortenberrys were required to appeal the appointment of the receiver within twenty days from the October 27, 2006, order."); *Long v. Spencer*, 137 S.W.3d 923, 926 (Tex. App.—Dallas 2004, no pet.). The First Court of Appeals set forth the reasons an order of receivership must be appealed 20 days after its entry:

> A contrary holding would mean that a party could rightfully attempt to set aside an order of receivership in an appeal regardless of how long ago the receivership order was entered. The setting aside of an order of receivership has the effect of nullifying all intervening acts of the receiver . . . . or, at least, of raising serious questions concerning the validity of such intervening acts. Furthermore, an unlimited time to appeal would mean that the order of receivership would *never* be beyond challenge, and thus never attain the finality upon which the parties, the receiver, and those who have transacted with the receiver, are entitled to depend. Allowing the vacation of a receivership at any

8

time after its creation would work undue hardship on third parties who have dealt in good faith with the receiver.

*Scalfani v. Scalfani*, 870 S.W.2d 608, 611 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (internal quotation marks and citation omitted). The requirement that a receivership order be appealed immediately is based on the notion of estoppel, *i.e.*, the reliance of third parties who dealt with the receiver in good faith. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 395 (Tex. 2020).

The same reasoning applies to appeals of orders confirming the sale of receivership property. *See Gibson v. Cuellar*, 440 S.W.3d 150, 155 (Tex. App.—Houston [14th Dist.] 2013, no pet). In this case, however, the Inker Street property has not been sold, but has merely been found to be non-exempt. The order approving the master's report's finding that the Inker Street property is non-exempt does not raise the same concerns as an order appointing a receiver or an order confirming the sale of receivership property. Here, there has not yet been any reliance by a purchaser of the Inker Street property on the finding that that the property was non-exempt and could be properly sold by the receiver.

In essence, Amegy's argument is that whenever an order is appealable, it can never be reconsidered by the trial judge even if the trial judge continues to have jurisdiction over the parties. That is not necessarily the case, however. An analogous situation involves appealable pre-trial orders. Section 51.014 of the Civil Practice and Remedies Code lists numerous pre-trial orders can be appealed. Merely because they can be appealed does not mean that they must be appealed. For example, an interlocutory order denying a special appearance can be appealed. Civ. Prac. & Rem. Code § 51.014(a)(7). If the trial judge denies a special appearance and

9

the defendant does not appeal, the trial judge has not lost the ability or jurisdiction to reconsider that motion at a later date and grant the special appearance. *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866 n.15 (Tex. App.—Austin 2008, no pet.) ("The legislature did not state that section 51.014(a)(7) is the exclusive or mandatory means for appealing the types of orders within its scope, nor did it say anything about limiting our general appellate jurisdiction to consider such orders after they are merged into final judgments. . . . [W]e cannot conclude that by its limited grant of jurisdiction to us to consider certain types of otherwise-unappealable interlocutory orders, the legislature intended correspondingly to limit our subject-matter jurisdiction over appeals from final judgments.").

We hold that, although the June 12, 2013 order was final and appealable, the trial court retains plenary power over the order and the trial court did not abuse its discretion by setting the first master's report for trial. *See Alexander Dubose Jefferson & Townsend LLP*, 540 S.W.3d at 581; *Gutman*, 2022 WL 574968, at *3; *Hill*, 460 S.W.3d at 764.

**Second Master's Report**

Baumann found in the second master's report that Megrelis had made no effort to pay the judgment despite having the ability to do so, was in contempt of the trial court's turnover order by hiding funds and should be attached until he purged himself of contempt. The second master's report did not resolve a discrete issue because there is no order of contempt. Without the trial court actually rendering a proper order of contempt, there are issues still left to be resolved and the order approving the second master's report is not a final, appealable order. *Cf. Mitchell*, 523 S.W.3d at 196 (holding that appellants had no right to appeal order of sale

because it did not resolve discrete issues regarding their ownership in property where order of sale stated it was subject to third parties' rights); *Art Inst. of Chicago v. Integral Hedging, L.P.*, 129 S.W.3d 564, 572 (Tex. App.—Dallas 2003, no pet.) (holding order at issue in receivership was not final because record showed that trial court made clear that court was not finished with application for attorney's fees and issues were left open for further discussion). We conclude that it was not an abuse of discretion for the trial court to set the second master's report for trial.

## CONCLUSION

Having determined that the trial court did not abuse its discretion by setting the master's reports for trial, we deny Amegy's petition for writ of mandamus. We also lift our stay of September 7, 2021.


/s/     Randy Wilson
         Justice


Panel consists of Chief Justice Christopher and Justices Hassan and Wilson. (Hassan, J., concurring in result only).

11